JOHN W. AUBREY *v.* STATE OF INDIANA.

[No. 973S183. Filed May 6, 1974.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert H. Carpenter,* Deputy Attorney General, for appellee.

HUNTER, J.—This is a direct appeal from a conviction for commission of a felony while armed, to-wit: robbery. Defendant presents two issues for our determination:

(1) Whether the trial court committed reversible error by refusing to admonish the jury to disregard certain contempt proceedings held in open court;

(2) Whether the evidence was sufficient to support the conviction.

The evidence most favorable to the State discloses, in part, the following facts: On November 25, 1972, the Bill Jones Corner Bar in Indianapolis was entered by two nylon-masked men. One of the two was armed with a sawed-off shotgun, the second with a pistol, and a third man remained outside armed with a pistol. The two men inside ordered all the patrons to lie on the floor and proceeded to take wallets, purses, jewelry and to remove $325 from the cash register. None of the victims could identify any of the men.

During the trial, the prosecutor called an alleged accomplice to the witness stand and in the presence of the jury this direct testimony ensued:

Q. "What's your name, sir?"
A. "Charles Blake."
Q. "Where do you live right now?"
A. "Jail."
Q. "Marion County Jail?"
A. "Yes, sir."
Q. "Before you went to jail, where did you live?"
A. "1247 Gloss."
Q. "Calling your attention to November 25, 1972, at approximately ten o'clock, were you in Jones' Corner tavern?"
A. "I'll refuse to answer that."
Q. "Was a man by the name of John W. Aubrey with you on that night?"

A. "I'll refuse to answer that on the grounds it might incriminate me."

Q. "Your Honor, at this time, with deep regret, the State would offer this man, Charles Blake, immunity as to this charge only."

*Court:* "Do you seek an order compelling this witness to answer the question?"

*Mr. Thompson:* "That's correct, your Honor."

*Court:* "Mr. Wurster, have you received a copy of the —'

*Mr. Wurster:* "I saw a copy of it, your Honor during the recess and am familiar with it."

*Mr. Thompson:* "If I may lay a foundation prior to asking any further questions. I should like to establish that his attorney is here and present for the record."

*Court:* "Proceed."

Q. "Mr. Blake, who is your attorney?"

A. "Mr. Schuster, er —"

Q. "Is it the red-haired man here against the wall?"

A. "Yes, sir."

Q. "He's present in Court?"

A. "Yes, sir."

*Court:* "Do you wish to be heard outside the presence of the jury?"

*Mr. Thompson:* "Yes, your Honor."

At this time the jury was finally excused and the immunity hearing proceeded. The witness was granted the immunity requested by the State and thereupon the jury returned:

*Court:* "Be seated, please. The Reporter will please re-read the two questions which were previously asked by the Prosecutor one at a time, and we will deal with each one individually. All right, Madam Reporter."

*Mrs. Bath:* "Question, 'Referring to November 25, 1972, were you in Jones' Corner tavern?'"

A. "I refuse to answer on the grounds it might incriminate me."

*Court:* "The second question, please."

*Mrs. Bath:* " 'Was a man by the name of John W. Aubrey in Jones' Corner tavern?'"

A. "I refuse to answer on the grounds it might incriminate me.'

> *Court:* "Mr. Charles Blake, I hereby find you in direct civil contempt of this Court. I remand you to the custody of the Sheriff of Marion County until you purge yourself of said contempt by answering the questions which you have been ordered to answer by this Court. In the event that it is determined that your failure or refusal to answer such questions is a continuing or permanent refusal, penalties will be assessed against you for direct criminal contempt of this Court. All right. You'll go with the Sheriff."

> *Mr. Wurster:* "Your Honor, at this time the defendant would respectfully move that the Court admonish the jury that the proceedings just held in front of the jury in no way affect the trial of this defendant."

> *Court:* "Well, as you have framed that statement, I don't think I can admonish the jury."

> *Mr. Wurster:* "I don't think the jury should be allowed to consider that as any evidence involved in this case, your Honor."

> *Court:* "Well, certainly not."

> *Mr. Wurster:* "The witness just took the stand and refused to testify. —"

> *Court:* "There is no evidence."

> *Mr. Wurster:* "— and the Court ordered the defendant — or the witness — to testify and found the witness in contempt of Court, the Court and jury."

> *Court:* "Well, that comes out in argument and instructions—final instructions of the Court."

> *Court:* "All right. The State will call its next witness, please."

We are of the opinion that the failure to admonish the jury when requested constituted reversible error. While a defendant is not entitled to a perfect trial, he is entitled to a fair trial. *White* v. *State* (1971), 256 Ind. 64, 272 N. E. 2d 312. The record discloses that the State was aware before trial that this witness would refuse to testify. The natural, even inevitable, inference which is raised in the jury's mind when *an alleged accomplice refuses to testify* is that the withheld testimony would be damaging, not only to the witness, but also to the defendant. Thus, the mere refusal to speak

indelibly implants adverse inferences in the minds of the jurors and reaches them in a form not subject to cross-examination. Blake's refusal to testify "may well have been the equivalent in the jury's mind of testimony." *Douglas* v. *Alabama* (1965), 380 U.S. 415, 419, 85 S. Ct. 1074.

We concur in the reasoning of Judge Learned Hand as stated in *United States* v. *Maloney* (2nd Cir. 1959), 262 F. 2d 535, 537-538:

> "When a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused. If the prosecution knows when it puts the question that he will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind. In the case at bar it can hardly be doubted that the answers of each of the three witnesses, if given, would have served to corroborate Parker's story, either as to Maloney's possession of the 'credentials,' or as to the plan for an abortion. . . .

> \* \* \*

> "The prosecution replies that, if it is forbidden to put the question, the jury may well assume that the witness, if called, would testify for the accused, and that this inference too would be unfair. We must confess that the situation is one in which either alternative results in prejudice to one side or the other; and it is impossible, so far as we can see, to lay down any general rule that will cover all instances. . . .

> \* \* \*

> "As *res integra*, it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them, imposing, as they do, upon the jury a task beyond their powers: i.e., a bit of 'mental gymnastics,' as Wigmore § 2272 calls it, which it is for practical purposes absurd to expect of them. However, the situation is in substance the same as when a judge tells the jury not to consider the confession, or admission, of one defendant in deciding the guilt of another, tried at the same time; and, since it is settled that this rubric will cure that error (Delli Paoli v. United States, 352 U.S. 232, 77 S. Ct. 294, 1 L. Ed. 2d 278), we do not see why it should not cure the error here. We rest our decision therefore upon the fact that the accredited ritual was not followed; and surely, if it is ever to be taken seriously, there could hardly

be an occasion when it was more necessary, especially as to the refusals of Parkhurst and Silin whose corroboration of Parker touched upon the only possible source of jurisdiction over the subject matter: the use of the F.B.I. 'credentials.' The error makes unnecessary any discussion of the other points raised."

Likewise, commencing the immunity hearing in the jury's presence served to emphasize Blake's refusal to testify. The State urges that the trial court may have had good reason to refuse to admonish the jury since to do so might have augmented the issue. We agree that this may, indeed, have been the motivating force behind the trial court. Nevertheless, as we recently stated in *Gross v. State* (1974), 261 Ind. 489, 306 N. E. 2d 371, choice of trial tactics is within the province of the defendant and his counsel, and when requested by defendant on these facts, the admonition should have been given.

Neither do we find persuasive the State's argument that defendant could have tendered a final instruction to correct any error which might have previously occurred. The time lapse between Blake's refusal to testify and summation was significant. Again, for tactical reasons, the defendant may have chosen not to broach the subject again. To contend that because the defendant did not submit a final instruction and that he, therefore, somehow "waived" error does not appeal to the sensibilities of this Court.

Considering our disposition of the first issue raised, we do not reach the question of the sufficiency of the evidence. The cause is remanded for a new trial.

Reversed and remanded.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 310 N. E. 2d 556.