Cecil BREWSTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 382S86.

Supreme Court of Indiana.

July 1, 1983.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Cecil Brewster was convicted of Voluntary Manslaughter at the conclusion of a jury trial in Marion Superior Court on September 15, 1981. He was sentenced to fifteen (15) years imprisonment. Brewster now appeals.

All of the defendant's assignments of error revolve around the refusal of a witness to testify and the conduct of the State in attempting to gain this testimony.

The evidence most favorable to the State reveals that on August 27, 1980, Brewster shot and killed Jerry Cleary in front of "Larry's Club," 20th and Parker, in Marion County. There were several witnesses present at the time of the killing. The defendant later told two of the witnesses that he killed a man.

Kirk Douglas Brewster, the defendant's brother, was one of the eyewitnesses at the scene. Both parties conceded that he was not involved in the incident. Kirk gave a statement to police officers in which he stated that his brother, Cecil Brewster, approached Cleary, exchanged a few words with him, and then shot Cleary with a shotgun. Kirk said the victim "slammed" backwards on the ground and "didn't move anymore." There were no weapons in Cleary's hands and although Cleary had his fists balled, his hands were down by his side at the time of the shooting.

During the trial the State called Kirk Douglas Brewster as a witness. Acting on information that Kirk might refuse to testify, the defense moved to call the witness to the stand outside the presence of the jury to determine whether he would testify. The trial court denied the motion and Kirk Brewster was called to the stand. Kirk identified the defendant as his brother and then refused to testify any further. No issue of self-incrimination was raised. The State insisted that nothing in Kirk's testimony would incriminate him and the court therefore ordered Kirk Brewster to testify. The State tried to question the witness but he refused to answer the questions. The defense moved for a mistrial which was denied. Detective Lewis J. Christ of the Indianapolis Police Department then took the witness stand. Detective Christ stated that he took a statement from Kirk Brewster after he advised Kirk of his rights. The detective then related the contents of the statement to the jury. The defendant objected on hearsay grounds but the trial court ruled that because Kirk Brewster was available for cross-examination, it would be proper to admit the statement into evidence.

Later the court did call Kirk Brewster to the stand for cross-examination by the defense on the contents of the statement made to the police. The defense asked the witness if he would still refuse to testify if he was asked questions about the incident and the witness replied in the affirmative. The defense ended the questioning without asking any questions about the statement itself. Later, the defense renewed the mistrial motion and asked that the court admonish the jury to disregard Kirk's refusal to testify.

In *Pitman v. State,* (1982) Ind., 436 N.E.2d 74, two witnesses were called who had given indications that they did not intend to testify. The defense made the identical motion there as was made by the defendant here. The defense in *Pitman* requested the court's permission to question the witnesses outside the jury's presence and the trial court refused to do so. This

Court held the procedure there to be proper, stating:

"It is clear that the trial court has the responsibility to manage and control the proceedings which are conducted before him and is given wide latitude of discretion in carrying out his duties. His responsibility includes the taking of testimony in a manner to insure that the rules of procedure and evidence will be adhered to. (citations omitted). Here, the trial court acted properly in refusing to permit evidence to be solicited in the absence of the jury."

436 N.E.2d at 78.

In *Pitman,* however, the trial judge did admonish the jury, advising them they were not to use the witnesses' refusal to testify as evidence against the defendant in any manner, nor to let it influence their verdict as to the guilt or innocence of the defendant. The trial court also gave a final instruction on this issue. We also note that in *Aubrey v. State,* (1974) 261 Ind. 692, 310 N.E.2d 556, the witness who did not intend to testify was an alleged accomplice of the defendant in the cause for which the defendant was being tried. He had the privilege not to incriminate himself and asserted it before the jury. The prosecutor, before that jury, said: "[W]ith deep regret, the State would offer this man, Charles Blake, immunity as to this charge only." The witness still refused to testify after being granted immunity. In *Aubrey* we noted that the State was aware of the witness' intentions and held:

"The natural, even inevitable, inference which is raised in the jury's mind when *an alleged accomplice refuses to testify* is that the withheld testimony would be damaging, not only to the witness, but also to the defendant." (emphasis in original)

*Id.* at 695, 310 N.E.2d at 559. Therefore, this Court held that the failure to admonish the jury when requested constituted reversible error.

The present case can be distinguished from *Aubrey* because the witness was not an accomplice or co-defendant but instead was merely an eyewitness and was also the defendant's brother. The jury did not have to speculate as to what Kirk might have said because his testimony was, in fact, given by the police officer and it was incriminating to the defendant. The trial court here, however, should have followed the procedure of the trial judge in *Pitman, supra,* by admonishing the jury and instructing them in the final instructions as to the appraisal it was to give to Kirk Brewster's conduct since the defense stated the defendant was prejudiced by the incident and also because it appeared that the defendant himself may have instigated it. It appears the admonishment would have been of little effect however, since subsequently the statement of Kirk Brewster was introduced into evidence and it certainly did incriminate the defendant and left little for the jury to speculate about.

Defendant then claims that the admission of Kirk Brewster's statement into evidence through the police officer was reversible error because the statement was hearsay, being written evidence in court of a statement made out of court and offered to show the truth of the matters asserted therein. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162; *Harvey v. State,* (1971) 256 Ind. 473, 269 N.E.2d 759. In *Rapier v. State,* (1982) Ind., 435 N.E.2d 31, a witness, without an implication of self-incrimination and not being a co-defendant or an accomplice, refused to testify and then admitted on the stand making a statement but repudiated its truthfulness. The detective who took the statement then sponsored it and was permitted to give it into evidence. This Court held that there was no error in permitting the statement to be introduced into evidence, citing our earlier case of *Patterson v. State,* (1976) 263 Ind. 55, 324 N.E.2d 482. *Patterson* provided that a prior out-of-court statement is permissible as substantive evidence if the declarant is available for cross-examination. A similar situation was presented in *Stone v. State,* (1978) 268 Ind. 672, 377 N.E.2d 1372, and we held this to be a proper case in which to apply the *Patterson* rule. *See also Samuels*

*v. State,* (1978) 267 Ind. 676, 372 N.E.2d 1186.

We question the extension of· the *Patterson* rule, however, to an incident such as the one in the instant case where the witness giving the statement, neither admitting nor denying that he did give it, refuses to testify and makes it apparent to all that he will not testify under any circumstances. The witness cannot be considered available for cross-examination under such circumstances and this was shown when the defendant did, in fact, call him for cross-examination. We are not inclined to find, however, that any error committed by the trial court in this incident was reversible error. Any error in the admission of evidence is harmless when other evidence having the same probative value is admitted without objection and is not refuted. *Badelle v. State,* (1982) Ind., 434 N.E.2d 872, 875. A denial of the right of confrontation can be harmless error where there is evidence for conviction that is so convincing that a jury could not properly find otherwise. *Carter v. State,* (1977) 266 Ind. 140, 145, 361 N.E.2d 145, 148, *cert. denied* (1977) 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142.

Here witnesses Troy Taylor and Kevin Cleary testified to the same actions that Kirk Brewster described, that is, the defendant walked up with a shotgun, pointed it at Cleary, poked him in the stomach with it, and shot him. These two witnesses did not clearly identify Cecil Brewster as the shooter although they did equivocally say it looked like him or could be him. Witness Richard Doerr identified Cecil Brewster as the man with the shotgun, saw him point it but did not see him shoot Cleary. He heard the shot, looked up, and saw Brewster holding the gun. Mark Welch testified that he saw the man with the gun, saw him approach Cleary, put the gun to Cleary's stomach and pull the trigger. Phyllis Maxwell testified she saw the defendant get a gun from the truck and angrily proceed toward the scene of the argument, heard a shot, and saw Cecil Brewster return with the gun. She asked him if he shot the man and he responded:

"I guess, I guess, I don't know, I guess I did." Alice Van Laningham said Brewster admitted shooting a man later that night. Cecil Brewster's father testified he saw Cecil after the shooting and Cecil cried and said: "O my God, I didn't mean to do what I did." None of this testimony was refuted. The testimony of Kirk Brewster, though having probative force because he was an eyewitness, was nonetheless nothing more than cumulative of the testimony of these witnesses and it can certainly be presumed the jury had adequate evidence and would have convicted the defendant even without the incident of Kirk Brewster's conduct and his statement. We therefore find any error of the trial court in this regard to be harmless error.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.