Donald Eugene **ROBERTS**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 1184S470.

Supreme Court of Indiana.

May 16, 1986.

Belle T. Choate, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Donald Roberts was convicted after trial by jury of murder during the commission of a robbery, Ind.Code § 35–42–5–1 (Burns 1979), and murder during the commission of a burglary, Ind.Code § 35–42–1–1(2) (Burns 1979), and received two life sentences. The trial court denied Roberts' subsequent petition for post-conviction relief.[1] He now appeals that denial, raising the following issues:

1. Whether he was denied effective assistance of counsel; and,

2. Whether he was denied a fair trial. We affirm.

Roberts bore the burden of proving his allegations, and he is appealing from a negative judgment. The trial court was the sole judge of the weight of the evidence and of the credibility of the witnesses. We will reverse its judgment as contrary to law only where the evidence is without conflict and leads to but one conclusion, a conclusion not reached below. *Young v. State* (1984), Ind., 470 N.E.2d 70.

## I. Effectiveness of Counsel

The proper standard for attorney performance is that of reasonably effective assistance. Judicial scrutiny of counsel's performance is highly deferential. Appellant must show, first, that counsel's performance was deficient and, second, that the defense was prejudiced by the deficient performance. *Strickland v. Washington*

---

1. Roberts' petition for post-conviction relief challenged the imposition of two life sentences for one homicide. The trial court agreed that because only one homicide occurred, Roberts could not properly be convicted and sentenced for two felony murders. *See, Shields v. State,* (1986) Ind., 490 N.E.2d 292. Therefore, the court vacated the conviction for murder in the commission of a burglary.

(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

The charge against Roberts was that he and an accomplice, Ben Neal, bound and gagged an elderly acquaintance for the purpose of robbing him. They left the helpless victim in a wooded area where he died either from strangulation by the gag or from exposure to the elements.

The theory of the defense was that Neal ordered Roberts at gunpoint to tie and gag the victim and forced him to help steal the man's possessions. The State called Neal to the stand, and he refused to answer all questions, asserting his Fifth Amendment privilege.

### A. Failure to Object to Accomplice Neal's Testimony

■ Roberts claims he was denied effective assistance of counsel because his attorney did not object to Neal's "testimony" and did not request that the jury be instructed that it should not infer Roberts' guilt from Neal's exercise of his right to remain silent. We disagree that counsel erred.

Roberts cites *Aubrey v. State* (1974), 261 Ind. 692, 310 N.E.2d 556, in support of his argument. Aubrey denied his involvement in a robbery committed by three masked men. The State called an alleged accomplice to the stand who repeatedly exercised his right to remain silent. The trial judge refused to admonish the jury that the accomplice's silence was not evidence of Aubrey's guilt. This Court vacated the conviction, holding that it was reversible error to refuse the instruction because "the natural, even inevitable, inference which is raised in the jury's mind when an alleged accomplice refuses to testify is that the withheld testimony would be damaging, not only to the witness, but also to the defendant". *Id.*, 310 N.E. at 599.

The language from *Aubrey* is not dispositive here. Roberts' counsel made strategic use of Neal's appearance. Counsel testified at the post-conviction hearing that he wanted the jury to compare Neal's demeanor to Roberts'. Unlike Aubrey, Roberts

had admitted a limited involvement in the homicide, but claimed Neal had forced him to commit the crime. At trial, counsel cross-examined the reticent accomplice at length, not receiving answers but framing his questions in a way clearly calculated to promote the defense theory that Neal was the "real culprit." Neal's refusal to testify could have bolstered the theory of the defense, and counsel took advantage of that possibility in his cross-examination. In this case, the fact that the alleged accomplice "took the Fifth" did not necessarily prejudice Roberts.

Counsel's approach to Neal as a witness was a strategic choice. Roberts now disapproves of the strategy, but his criticism does not support a charge of ineffectiveness of counsel. *Elliott v. State* (1984), Ind., 465 N.E.2d 707. Tactics which appear sound in the midst of a trial, with all its variables and unknowns, may often appear faulty with the benefit of hindsight. *Davis v. State* (1981), Ind., 428 N.E.2d 18. There is a substantial basis for concluding that the choice made by Roberts' counsel was a good one. As he later testified, "Now if it's bad trial tactics, it's bad trial tactics, but at the time I thought I was a wizard." Finally, *Aubrey* is inapposite because it involved the court's *refusal* to give a proper limiting instruction tendered by the defense in response to the negative inference created by an accomplice's testimony. Here, no such request was made, and Roberts has not shown that counsel erred or that he was harmed.

### B. Failure to Object to Testimony from Prosecutor

■ During cross-examination of a State's witness, defense counsel elicited testimony that his client had not been offered an opportunity to testify before the grand jury. The prosecutor took the stand and testified Roberts *had* been invited to testify but had declined on advice of counsel.

Roberts claims his attorney was ineffective for not objecting when the prosecuting

attorney, allegedly in violation of the Cannons of Professional Ethics, became a witness in the case. He further claims his attorney should have objected to the substance of the prosecutor's testimony—that Roberts was unwilling to appear before the grand jury—on the grounds it was inflammatory and prejudicial.

First, any question about the propriety of the prosecutor's conduct is an issue for another forum, as it appears that the prosecutor's role as a witness in this case did not in itself harm Roberts. Second, we disagree with Roberts that his attorney erred in not challenging the substance of the prosecutor's testimony.

Counsel testified at the post-conviction hearing that he did not specifically recall the prosecutor having testified. He stated he presumed that he did not object because sometimes objectionable testimony should not be challenged in front of the jury lest trial counsel "win a battle, lose a war." Again, we do not review strategic decisions. Moreover, counsel invited the testimony that Roberts chose not to appear before the grand jury when he elicited earlier testimony to the contrary. Thus, an objection would have availed him nothing.

### C. Failure to Move to Suppress Roberts' Confession

■ Next, Roberts argues he received ineffective representation because his attorney did not move to suppress his confession. Roberts testified at the post-conviction hearing that he told his attorney before the trial that the police had given him liquor and that he was intoxicated when he confessed.

However, Roberts testified at trial that he gave the confession willingly; he did not say he was intoxicated. Additionally, the testimony of the officer who advised Roberts of his rights supported the conclusion that the confession was made knowingly and voluntarily.

### D. Failure to Object to Instruction

■ Finally, Roberts claims his attorney was ineffective because he did not object to

an instruction regarding Roberts' unexplained possession of the stolen goods. The instruction stated that "the failure, if there be, of the Defendant to account for such possession, [is] a circumstance which you may take into consideration in determining whether the defendant committed the robbery."

While we agree that it is *unexplained possession* rather than *failure to explain* which may be circumstantial evidence of guilt, we do not believe Roberts was harmed by the instruction or by counsel's failure to challenge it. Either phraseology informs the jury that if evidence is presented that Roberts possessed the victim's stolen property and if the record is silent as to an explanation for the possession, guilt may be inferred.

Roberts' reliance on *Dedrick v. State,* (1936), 210 Ind. 259, 2 N.E.2d 409, is misplaced. In *Dedrick,* the jury was instructed that unexplained possession of stolen goods creates a *presumption* of guilt. The challenged instruction in this case merely informed that jury about what might be considered as evidence. The jury was charged in other instructions that its role was to determine the law and facts, that Roberts was presumed innocent, and that the burden of proving his guilt never shifted from the State. Taken as a whole, the charge was proper.

### II. Fair Trial

■ Roberts argues he was denied a fair trial because the prosecutor acted as a witness and referred to Roberts' unwillingness to testify before the grand jury, because accomplice Neal exercised his right to remain silent, and because the court instructed the jury that a failure to explain possession of stolen goods may be circumstantial evidence of guilt. These issues were available for direct appeal; in an effort to hurdle the doctrine of waiver, Roberts claims fundamental error occurred. Fundamental error is error so grave that, if not rectified, it would result in a denial of

fundamental due process. *Warriner v. State* (1982), Ind., 435 N.E.2d 562.

Having concluded above that these assertions were unmeritorious as a basis for Roberts' claim of ineffective counsel, we similarly find that they are no more compelling when labelled with the words "fair trial." There is every reason to believe that Roberts received a fair trial.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.