Roland G. SHOUP, II, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee.

No. 27A02–8908–CR–410.

Court of Appeals of Indiana,
Second District.

May 8, 1991.

Transfer Denied July 22, 1991.

David M. Payne, Patrick N. Ryan, Ryan, Welchons & Payne, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Indianapolis, for appellee.

SULLIVAN, Judge.

Roland Shoup, II (Shoup) appeals his convictions of Neglect of a Dependant, a class D felony, and two counts of Battery, class D felonies.

We affirm.

Shoup presents several issues for our review, which we restate and consolidate as follows:

1. Whether the court erred in admitting a videotaped statement of the three year old victim;

2. Whether the court erred, as a matter of law, in entering a conviction for neglect of a dependant;

3. Whether the court erred in refusing to give Shoup's tendered instruction on criminal recklessness as a lesser included offense of battery;

4. Whether Shoup's sentence is manifestly unreasonable.

Shoup was charged with neglect of a dependant and battery after the police on September 29, 1988, discovered D.D., Shoup's three year old stepson, unattended and taped to a small red chair near the top of the stairs in Shoup's home. One of the officers who discovered D.D. testified that he observed bruises on D.D.'s forehead, buttocks and legs.

Nancy Washburn, an employee of Family Service Society testified that she taught a parenting class which Shoup and his wife attended. On the evening of the first class, Nancy took D.D. to the restroom. While assisting D.D., Nancy noticed numerous black and purple bruises on D.D.'s lower back and buttocks. She testified that the bruises were in the shape of a hand. She questioned the defendant and Mrs. Shoup, and Shoup admitted that he had hit D.D. because D.D. refused to say his ABC's or count money.

A friend of Mrs. Shoup, Melissa Shildmyer, testified that she visited the Shoup house on September 27, 1988, and saw Shoup take D.D. into a bedroom. The friend noticed that Shoup had a belt with him, and heard D.D. scream and cry. The following morning, Melissa observed bruises on the back of D.D.'s legs which matched the belt she had seen. Melissa also testified that on September 15, 1988, while she took D.D.'s mother to the unemployment office, D.D. was left alone in the house locked in a closet. D.D.'s mother told the friend that D.D. had to be left in the closet because he had misbehaved.

Mrs. Shoup testified that Shoup had told her to put D.D. in the closet and that Shoup would beat her if she disobeyed. Melissa testified that she visited the Shoup house again on September 21, 1988, and saw D.D. in the closet. Shoup came home at 8:15 p.m., approximately four hours after Melissa initially saw D.D. in the closet. Shoup let D.D. out of the closet at 9:00 p.m.

Melissa agreed to babysit for D.D. on September 29, 1988. She testified that she spoke to Mrs. Shoup over the telephone early that morning. Mrs. Shoup said that D.D. could not come over because the defendant had put him in the closet as punishment for not turning the pages of an ABC book. Melissa subsequently reported D.D.'s situation to two friends, and the police were contacted. After. he was discovered, D.D. told the police that "Daddy did it." Record at 692.

· I.

Shoup argues that the court erred in admitting a videotaped statement of D.D. D.D.'s statement was taken by Tawanna Clark, an agent of the Welfare Department, on the day D.D. was found taped to a chair in his home. The court conducted a combined hearing on the competency of D.D. as a witness and the admissibility of the video statement. The court found that D.D. did not understand the nature of the oath and was therefore incompetent to testify at trial. However, the court ruled that the videotaped statement was admissible.

Indiana Code 35–37–4–6 permits a court, in certain limited circumstances, to admit a videotaped statement of a child into evidence despite an otherwise valid hearsay or confrontation objection. At the time of Shoup's conviction, that statute provided:

"(a) This section applies to criminal actions for the following:

(1) Child molesting (IC 35–42–4–3).

(2) Battery upon a child (IC 35–42–2–1(2)(B)).

(3) Kidnapping (IC 35–42–3–2).

(4) Confinement (IC 35–42–3–3).

(5) Rape (IC 35–42–4–1).

(6) Criminal deviate conduct (IC 35–42–4–2).

(b) A statement or videotape that:

(1) Is made by a child who was under ten (10) years of age at the time of the statement or videotape;

(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the child; and

(3) Is not otherwise admissible in evidence under statute or court rule;

is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.

(c) A statement or videotape described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:

(1) The court finds, in a hearing:

(A) Conducted outside the presence of the jury; and

(B) Attended by the child;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; and

(2) The child:

(A) Testifies at the trial; or

(B) Is found by the court to be unavailable as a witness because:

\* \* \* \* \* \*

(iii) The court has determined that the child is incapable of understanding the nature and obligation of an oath.

(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement or videotape may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child." [1]

■ Shoup first contends that the subject matter of the videotape in this case relates only to the neglect of a dependent charges, and is therefore outside the applicability of Ind.Code 35–37–4–6. We agree that, when Shoup was convicted, the statute was not applicable to criminal actions for neglect of a dependent.[2] Shoup was also charged with and convicted of battery, which is within the ambit of the statute. The transcript of the video does indicate that injuries were apparent on D.D., and D.D. was questioned about how he received the injuries. However, the video statement relates primarily to the incident involving D.D. being left taped to a chair, which is the basis of Shoup's neglect conviction. Therefore, the majority of the statement should have been excluded as inadmissible hearsay and outside the scope of Ind.Code 35–37–4–6.

■ Even assuming sufficient relationship of the video statement to a material element of the battery charge, we nevertheless agree with Shoup's second contention that the admission of the videotaped statement violated his constitutional right to confrontation. In *Miller v. State* (1987) Ind., 517 N.E.2d 64 (*Miller I*), our Supreme Court held that the procedures set out in Ind.Code 35–37–4–6 properly preserved an accused's right to confrontation by requiring the court to conduct an admissibility hearing at which the child is present and subject to cross-examination by the accused. The court stated:

"The foundation for an effective balance between the rights of the child victim and those of the defendant has been laid through the enactment of Ind.Code § 35–37–4–6.... The goal of the statute is to reduce the child's emotional trauma caused by numerous court appearances, not to guarantee that the child will never have to face the defendant. Even against the pressure of policies favoring specialized treatment of child victims, the confrontation clause in article 1, section 13 of the Indiana Constitution does not permit wholesale denial of cross-examination." 517 N.E.2d at 73.

1. Found at Acts 1985, P.L. 316–1985, § 1.

2. Ind.Code 35–37–4–6(a) was amended, effective March 27, 1990, to include "Neglect of a dependent". P.L. 37–1990, § 22. Although the factual underpinnings might have justified a confinement charge so as to be within the statute, the restraining of the child in a chair and in a closet were alleged as neglect of a dependent.

Subsequently, our Supreme Court decided *Miller v. State* (1988) Ind., 531 N.E.2d 466 (*Miller II*). There, the court reaffirmed its previous ruling that the hearing required under the statute for the determination whether the child's out-of-court statements are admissible is intended to be adversarial and to provide the defendant with the opportunity for full cross-examination. In that case, as here, the defendant was not present during the video-taping of the child's statement. A hearing was held outside the presence of the defendant to determine the child's competency. Defense counsel was given the opportunity to question the child, but declined to do so. The court found the witness to be incompetent, but admitted the taped statement of the child. Our Supreme Court reversed the defendant's conviction, holding that the defendant was denied the opportunity to confront and cross-examine the child.

In the present case, the court held a combined hearing to determine the competency of D.D. and to determine the admissibility of the videotaped statement. D.D. and Shoup were present at the hearing, and both the judge and the prosecutor questioned D.D. to determine if he understood the nature of the oath. The court then provided defense counsel with an opportunity to question D.D., and defense counsel declined. The court ruled that D.D. was an incompetent witness, and the State then presented witnesses to prove the reliability of the statement and to bring forth corroborative evidence as required by the statute. The record does not disclose whether D.D. remained during the reliability and corroboration portion of the hearing.

The State contends that Shoup had the opportunity to cross-examine D.D. at the combined hearing and waived his right to cross-examine D.D. by failing to do so at that time. However, the record reveals only that the defendant was offered a chance to question D.D. during the competency portion of the hearing. Shoup's decision not to question D.D. at that stage of the proceedings cannot be interpreted as a waiver of his right to cross-examine D.D. regarding the substantive statements contained on the videotape. Cross-examina-tion of the child could properly be conducted at trial unless the court determines that the child is incompetent or unavailable to testify at trial as set forth in Ind.Code 35–37–4–6. Therefore, cross-examination on the substantive statements of the child at the competency stage of the proceedings would appear to be premature.

In *Miller I, supra,* our Supreme Court held that the hearing required contemplated an adversarial hearing which insured a defendant an opportunity to confront and cross-examine the child. Although the statute seems to say that *the* purpose of the hearing is to allow the trial court to determine that the "time, content, and circumstances of the statement or videotape provide sufficient indications of reliability", the court in *Miller I* read into the statute an additional purpose of providing the defendant an opportunity to confront and cross-examine the child:

"Although the statute does not explicitly provide that a child *declared unavailable for trial* may be cross-examined before trial, the legislative history and the implicit meaning of the statutory language show that was the intent." *Miller I, supra,* 517 N.E.2d at 72. (Emphasis supplied).

■ The clarification of the statute in *Miller I* does not tell us when the pre-trial opportunity for cross-examination arises. It is clear that the court must determine that the child is incompetent or unavailable for trial before the defendant has a right to cross-examine and confront the child in a pre-trial hearing. It would further seem that the right does not arise until the court has ruled that the child's statement or videotape will be admitted into evidence at the trial. We recognize, however, that the determination of admissibility under the guidelines of Ind.Code 35–37–4–6 may require some deliberation by the court and that immediate rulings are not always appropriate. Therefore, as a practical matter, the opportunity to confront and cross-examine the child should occur at the admissibility hearing. We also recognize that courts generally combine the competency hearing with the hearing to determine the

admissibility of the child's statement. Nevertheless, some time after the court determines that the child is incompetent or unavailable for trial, the defendant must affirmatively be given the opportunity to cross-examine the child concerning the substance of the out-of-court statement or videotape.

In the present case, Shoup was not affirmatively given the opportunity to cross-examine D.D. concerning the substance of the videotaped statement. We do not perceive that counsel's failure to question D.D. during the competency portion of the hearing constituted a knowing, intentional waiver of Shoup's right to cross-examine D.D.

■ Despite our concerns about the admissibility of D.D.'s videotaped statement, the reception of the tape into evidence did not constitute reversible error. The denial of a defendant's right to confrontation may be harmless error. *Coy v. Iowa* (1988) 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857; *Brewster v. State* (1983) Ind., 450 N.E.2d 507; *Casada v. State* (1989) 1st Dist.Ind. App., 544 N.E.2d 189. In *Chapman v. State* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, the United States Supreme Court held that before the violation of a defendant's federal constitutional right may be considered harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Under this standard we must determine whether the evidence, other than the videotaped statement by D.D., was so overwhelming that we are convinced the violation of Shoup's right to confrontation did not contribute to the jury's decision to convict. *Casada, supra*, 544 N.E.2d at 197. Factors for assessing harmlessness include:

"the importance of the witness' testimony in the prosecutor's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Casada*, 544 N.E.2d at 197, *citing Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674.

In the present case, the police found D.D. taped to a chair and unattended. Tawanna Clark of the Welfare Department testified that she was present when Officer Gulley asked D.D. who taped him to the chair. She testified, without objection, that D.D. said "Daddy did it".[3] Record at 692. Melissa Shildmyer testified that on the day D.D. was found taped to a chair D.D.'s mother told her that Shoup had put D.D. in the closet as punishment for not turning the pages of an ABC book. Therefore, the evidence supporting the neglect conviction was extensive and the testimony of D.D. contained on the tape was cumulative.

Additionally, as earlier indicated, any evidence on the tape which may have impacted upon the battery convictions was minimal consisting of unspecific questioning about possible marks or bruises on D.D. In any event, the transcript of the tape reveals that D.D. was unable to confirm that he had received the injuries. Melissa Shildmyer and Nancy Washburn both testified concerning specific instances of battery upon D.D. by the defendant. Therefore, we hold that the admission of the videotape was harmless beyond a reasonable doubt.

II.

■ Shoup argues that the court erred, as a matter of law, in convicting him of neglect of a dependant. He bases this contention upon the fact that D.D. is his wife's son and that his wife has legal custo-

---

3. Officer Gulley also testified that he asked D.D. who taped him to the chair and that D.D. responded "Daddy did it". Record at 496. The court admitted this statement under the excited utterance exception to the hearsay rule. Shoup contends that this was error. Because of the lapse of time during the confinement, it may be that the utterance was not within the exception. *See Lewis v. State* (1990) Ind., 554 N.E.2d 1133; *Jester v. State* (1990) Ind., 551 N.E.2d 840. However, any error in the admission of this evidence is harmless because Tawanna Clark testified to D.D.'s response without objection. Therefore, Officer Gulley's testimony was cumulative. *Horn v. State* (1987) 2d Dist. Ind.App., 503 N.E.2d 1235.

dy of D.D. Under Ind.Code 35–46–1–4 (Burns Code Ed. Repl.1985), "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation" may be guilty of neglect. Shoup argues that he is not "a person having the care of a dependent" because his wife is D.D.'s court-appointed custodian.

Shoup's argument is without merit. It erroneously assumes that only one person may have the care of a dependent. Our statute encompasses not only those persons having legal responsibility of a child, but also those persons who have voluntarily assumed responsibility. *Dowler v. State* (1989) Ind., 547 N.E.2d 1069, 1072; *Bean v. State* (1984) Ind., 460 N.E.2d 936. The evidence in this case clearly establishes that Shoup assumed responsibility for D.D.'s care and discipline. Shoup's conviction of neglect is not contrary to law on the ground asserted.

### III.

■ Shoup argues that the court erred in refusing his tendered instruction on criminal recklessness as a lesser included offense of the battery charges. He concedes that criminal recklessness is not a necessarily included offense, but argues that criminal recklessness is a lesser offense of battery as charged in this case. An offense which is not a necessarily or inherently included offense of another offense may still be included as charged "if the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime." *Jones v. State* (1988) Ind., 519 N.E.2d 1233, 1234.

In *Mahone v. State* (1981) 3d Dist. Ind. App., 429 N.E.2d 261, the Third District held that criminal recklessness is not a necessarily included offense of battery because recklessness requires either a "substantial risk of bodily injury" or an infliction of serious bodily injury whereas battery requires only a touching. However, the court noted that criminal recklessness

may be included under a battery charge which alleges that bodily injury occurred.

In *State v. Mercer* (1986) 4th Dist. Ind. App., 500 N.E.2d 1278, the Fourth District, following *Mahone*, determined that criminal recklessness was a lesser offense of battery under the charges contained in the information in that case. There the charge alleged that the battery occurred when the defendant knowingly touched the victim "by shooting at and against the face of [the victim]". *Mercer*, 500 N.E.2d at 1282. The court reasoned

"the act of firing a gun at someone is an act which causes risk of bodily injury. Thus, in proving the touching element of battery, as charged, the State had to prove the bodily injury element of criminal recklessness." *Id.* at 1282.

Relying on *Mahone* and *Mercer*, Shoup argues that he was entitled to a criminal recklessness instruction because the battery charges against him did allege that bodily injury occurred. We do not disagree with the analysis of *Mahone* and *Mercer*. However, there is an additional distinction between battery and criminal recklessness which also affects the determination of whether criminal recklessness is a lesser included offense.

Criminal recklessness is defined in Ind. Code 35–42–2–2 (Burns Code Ed.Supp. 1990). That statute provides, in relevant part:

"(b) A person who recklessly, knowingly, or intentionally performs:

(1) An act that creates a substantial risk of bodily injury to another person;

. . . .

commits criminal recklessness, a Class B misdemeanor. . . .

(c) A person who recklessly, knowingly, or intentionally;

(1) Inflicts serious bodily injury on another person; . . . .

commits criminal recklessness, a Class D felony."

In *Humes v. State* (1981) Ind., 426 N.E.2d 379, our Supreme Court discussed whether criminal recklessness could be a lesser included offense of attempted mur-

der. The court made the following observations:

"The language in this statute appears contradictory at first glance since the concept of recklessly is placed in juxtaposition with the terms knowingly or intentionally. However, a closer study of this section of the code, the definitions of the terms involved, and the comments provided by the Indiana Criminal Law study Commission reveals that the *essential* element of the offense is reckless behavior. Intentional acts involving an actual injury are covered in the offenses of homicide, manslaughter and battery. Likewise, any intentional acts which do not actually result in an injury but are a substantial step toward the commission of those crimes are covered by the general attempt statute." (Emphasis in original.) *Humes,* 426 N.E.2d at 382.

This language would indicate that the court has read the "knowing or intentional" language out of the criminal recklessness statute. However, *Humes* clearly states that the words knowing and intentional are not misplaced in the statute "since reckless behavior does involve some intentional elements." *Id.* at 383. A reading of the *Humes* decision reveals that the court was not enunciating a requirement that to constitute criminal recklessness, the act must be done recklessly as opposed to knowingly or intentionally. Rather the court was stating that the criminal recklessness statute contemplates that the act, whether intentional or not, must be done with reckless disregard of the consequences.

Therefore, in order for criminal recklessness to be included as charged in a count of battery, the charging instrument must allege, not only facts which reflect a substantial risk of bodily injury, but also facts which show that the touching was done with a disregard of the harm that might occur. In the present case, the battery charges of which Shoup was convicted alleged:

COUNT 4: Shoup "did knowingly touch [D.D], a child of three years of age, in a rude, insolent or angry manner, to wit: struck [D.D] with a belt on the legs resulting in bodily injury to [D.D], to wit: belt marks on victims legs."
COUNT 6: Shoup "did knowingly touch [D.D], a child of three years of age, in a rude, insolent or angry manner, to wit: struck [D.D.] on the buttocks resulting in bodily injury to [D.D.] to wit: a bruise on said child's buttocks." Record at 10–11.

There is nothing in these charges which indicate a disregard for the consequences on the part of Shoup. To the contrary, they imply that recognition or knowledge of probable consequences was present. The court did not err in refusing an instruction on criminal recklessness.

## IV.

Shoup argues that the sentence imposed was manifestly unreasonable. The court ordered enhanced four year sentences on all three class D felony convictions, and ordered the sentences to be served consecutively. The court then suspended the sentence on the battery conviction under Count 6 and imposed four years probation following service of the sentence for neglect and the other battery conviction.

Indiana Code 35–38–1–3(3) (Burns Code Ed.Repl.1985) requires a court to record a statement of its reasons for selecting a sentence which is different from the presumptive sentence. The court is required to specify the underlying facts which support a finding of aggravating or mitigating circumstances. *St. John v. State* (1988) Ind., 523 N.E.2d 1353. Moreover, the court should specify all the significant mitigating and aggravating factors, and balance the factors to determine whether the aggravating factors outweigh the mitigating factors. *Id.; Henderson v. State* (1986) Ind., 489 N.E.2d 68.

During sentencing in the present case, the court stated three aggravating factors which it found to justify enhanced sentences, and the court specified underlying facts supporting the finding of these factors:

"(1) The Defendant is in need of correctional and rehabilitative treatment under a strictly controlled and supervised envi-

ronment in order to teach him the appropriate means of discipline and restraint when dealing with children. Defendant's prior voluntary efforts through the Family Service Parenting Classes met with failure and it is doubtful that, if left on his own, Defendant will be able to correct his lack of restraint and inappropriate means of discipline when dealing with children.

(2) Imposition of a reduced sentence would depreciate the seriousness [of] this crime. Child abuse is an insidious crime which happens all too frequently in this country. The sentence this Court renders must send a message to the public that child abuse will not be tolerated and those who insist on abusing helpless children will pay a high price.

(3) The victim of this crime, age 3, was a very small defenseless child with whom Defendant was in a position of trust. In addition, the victim suffered physical, and perhaps emotional, injuries as a result of the Defendant's conduct. Moreover, the manner in which the Defendant disciplined the victim is particularly heinous in that he taped the victim to a chair and placed the victim in the taped chair at the top of a stairway in a position of great peril to the child." Record at 202–203.

As mitigating factors, the court found that Shoup did not have a prior criminal record and that Shoup had strong family support. The court then found that the aggravating factors outweighed the mitigating factors and imposed the enhanced sentence.

■ Shoup challenges the propriety of each of the aggravating factors. The court's determination that a reduced sentence would depreciate the seriousness of the crime is improper unless the court is considering reducing the sentence. *See, Evans v. State* (1986) Ind., 497 N.E.2d 919. However, in *Day v. State* (1990) Ind., 560 N.E.2d 641, 642, our Supreme Court held that

"[a] sentence supported by permissible grounds sufficient to persuade the reviewing court that the original sentencing decision would have been the same

had the trial court not relied on the impermissible factor should be affirmed."

■ Here, the court articulated several other appropriate aggravating factors which support the sentence. Shoup argues that the court improperly considered the child's age as an aggravating factor because age is a material element in each of his battery convictions, which were elevated to class D felonies under Ind.Code 35–42–2–1(2)(B). In *Stewart v. State* (1988) Ind., 531 N.E.2d 1146 and *Tague v. State* (1989) Ind., 539 N.E.2d 480, our Supreme Court held that a child's tender age may in some circumstances be an aggravating factor despite also being an element of the crime provided that the court's finding is based upon the particularized circumstances of the factual elements of the crime. In this case D.D. was only three years old, well under the age of 13 specified in Ind.Code 35–42–2–1(2)(B). It was not inappropriate for the court to consider D.D.'s age, size and helplessness.

■ Additionally, the court found that the manner in which D.D. was neglected was particularly heinous because D.D. was taped to a chair and placed at the top of the stairs. The court may properly consider the manner in which the crime was committed as an aggravating factor. *Shields v. State* (1988) Ind., 523 N.E.2d 411.

■ Finally the court found that Shoup was in need of correctional and rehabilitative treatment. A mere recitation of the statutory factors is insufficient to support an enhanced sentence. *Erby v. State* (1987) Ind., 511 N.E.2d 302. Although a generalized statement that a defendant is in need of correctional and rehabilitative treatment is not a sufficient reason to enhance a sentence, here, the trial court specifically articulated facts supporting this finding. The court noted that Shoup had attended previous parenting classes and had failed to learn an appropriate means of discipline and restraint when dealing with children.

The court properly set forth his reasons for enhancing Shoup's sentence, and while a different court may have properly given a lesser sentence, the sentence which

Shoup received was not manifestly unreasonable.

The judgment is affirmed.

SHIELDS and HOFFMAN, JJ., concur.