**Howard STEELE, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 49S00–9406–CR–529.**

Supreme Court of Indiana.

Nov. 4, 1996.

Kay A. Beehler, Indianapolis, for Defendant-Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Plaintiff-Appellee.

DICKSON, Justice.

The defendant, Howard Steele, was convicted of rape, a class A felony; criminal deviate conduct, a class A felony; confinement, a class B felony; robbery, a class B felony; and battery, a class C felony. In this direct appeal the defendant's contentions concern the following: (1) the trial court's

refusal to grant a mistrial; (2) its refusal of defendant's tendered jury instructions on lesser included offenses; and (3) sufficiency of the evidence of robbery as a class B felony.

■ The defendant first contends that the trial court's failure to grant the defendant's request for a mistrial, after his brother refused to testify in the jury's presence, constitutes reversible error. The defendant and his brother were initially charged as codefendants, but separate trials were later ordered. At the defendant's jury trial, when the State called the defendant's brother to the witness stand, the following colloquy occurred:

> [PROSECUTOR] The State would call Terry Steele, Your Honor.
>
> THE COURT: Would you raise your right hand to be sworn, please? Do you solemnly swear the testimony you're about to give in this cause will be the truth, the whole truth, and nothing but the truth so help you God?
>
> TERRY STEELE: Nope.
>
> THE COURT: That answer can be taken two ways.
>
> TERRY STEELE: No, sir.
>
> THE COURT: One, you do not wish to testify, could be nope; and the other is you plan on testifying but you don't plan to tell the truth. Which is it, sir?
>
> TERRY STEELE: I'm not testifying.
>
> THE COURT: Okay.

Record at 214–15. The court excused the jury and then proceeded to conduct a hearing at which the brother reiterated his refusal to testify. The brother was then remanded into the sheriff's custody and removed from the witness stand before the jury returned. The court denied the defendant's motion for a mistrial and then admonished the jury as follows:

> Before the State calls its next witness, ladies and gentlemen, you are not to comment or to consider in any way that there was another individual here, called to the stand to testify, what that witness said while he was here, what you may think he would have said. Just don't think about what you think he would have said and the

fact that he was here. Please ignore that because it doesn't have anything to do with evidence that is or will be before you in this case.

Record at 245–46.

■ The denial of a criminal defendant's motion for mistrial constitutes reversible error where that denial subjects the defendant to "grave peril." *Taylor v. State,* 587 N.E.2d 1293, 1299 (Ind.1992). Mistrial is a drastic remedy which lies within the discretion of the trial court and the decision to grant or deny is afforded great deference. *Id.* On appeal, the gravity is measured by the probable persuasive effect on the jury, not on the impropriety of the conduct. *Id.* The appellant must show that only a mistrial could remedy the perilous situation into which he was placed. *Id.*

The defendant argues that reversal is required pursuant to *Aubrey v. State,* 261 Ind. 692, 310 N.E.2d 556 (1974), which observed:

> The natural, even inevitable, inference which is raised in the jury's mind when *an alleged accomplice refuses to testify* is that the withheld testimony would be damaging, not only to the witness, but also to the defendant. Thus, the mere refusal to speak indelibly implants adverse inferences in the minds of the jurors and reaches them in a form not subject to cross-examination. [The alleged accomplice's] refusal to testify "may well have been the equivalent in the jury's mind of testimony."

*Id.* at 695–96, 310 N.E.2d at 559 (emphasis in original) (quoting *Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934, 937 (1965)).

It is true that the convictions at issue in both *Aubrey* and *Douglas* were reversed on appeal. These cases, however, are distinguishable from the case at bar. In *Aubrey,* an immunity hearing was begun in the jury's presence. *Id.* at 694, 310 N.E.2d at 557. The jury heard the witness refuse to answer questions concerning the witness's whereabouts at the time the crime occurred as well as whether he was in the defendant's company at that time. They also heard the prosecutor offer the witness immunity on a related charge and, after returning to the courtroom,

they heard the trial court find the defendant in contempt for his continuing refusal to answer the above-mentioned questions. *Id.* at 694–95, 310 N.E.2d at 557. The judge subsequently refused to admonish the jury to disregard this exchange. *Id.* at 695, 310 N.E.2d at 558. This Court found that the refusal to admonish constituted reversible error. *Id.* at 695, 310 N.E.2d at 558–59. The present case is distinguishable because the trial judge here did in fact admonish the jury to disregard the defendant's brother's appearance on the stand, his refusal to testify, and anything the jurors might imagine that he would have said had he testified.

Moreover, in *Aubrey* this Court noted that the State knew that the witness would refuse to testify. *Id.* at 695, 310 N.E.2d at 559. In contrast, in the present case, although the codefendant's counsel informed the prosecutor that the codefendant might not testify, the prosecutor asserted that he believed he would because of the grant of immunity and the possibility of leniency in his own trial. *See also, Brown v. State*, 671 N.E.2d 401 (Ind.1996) (discussing the court's or parties' lack of prior knowledge concerning the witness' intent to refuse to testify).

In *Douglas*, quoted by this Court in *Aubrey*, the prosecutor called to the stand the defendant's alleged accomplice, who had been convicted but was appealing and therefore refused to testify, asserting the privilege against self-incrimination. *Douglas*, 380 U.S. at 416, 85 S.Ct. at 1075, 13 L.Ed.2d at 936. After the trial court ruled that his conviction barred his reliance on the privilege, the prosecutor, "[u]nder the guise of cross-examination to refresh [the witness's] recollection," read from the witness's alleged confession, pausing every few sentences to ask the witness, in the jury's presence, if he had made these statements. *Id.* at 416–17, 85 S.Ct. at 1075, 13 L.Ed.2d at 936. The witness continued to assert the privilege and to refuse to answer, but the prosecutor continued this

form of questioning until he had finished reading the entire confession. *Id.*

In the present case, the jury was not exposed to anything so incriminating as the line of questioning conducted by the *Douglas* prosecutor, who was permitted to continue with such "questioning" even after it became apparent that the witness would continue to assert the privilege. This jury only heard the codefendant's "Nope" and "I'm not testifying," not a full reading of a codefendant's confession nor even an express assertion of his constitutional privilege against self-incrimination.

Considering the minimal jury exposure to the defendant's brother's refusal to testify, the absence of substantive content of his statements in the jury's presence,[1] the lack of repetitive interrogation by the prosecutor, and the trial court's admonition, we decline to find that the defendant was subjected to grave peril. The trial court did not abuse its discretion by denying the defendant's motion for mistrial.

■ The defendant next claims that the trial court erred in refusing to give his tendered instruction concerning lesser-included offenses. However, the defendant has failed to comply with Indiana Appellate Rule 8.3(A)(7) which provides in part: "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." We find that this claim is thus waived.

■ The defendant contends that the trial court erred in giving Jury Instruction No. 9c, regarding accomplice liability, over his timely objection at trial. Citing *Small v. State*, 531 N.E.2d 498 (Ind.1988), he contends that the instruction fails to inform the jury that, to convict one as an accomplice, the evidence must show that he acted in concert with the primary perpetrator.

---

1. The defendant cites *Clark v. Duckworth*, 906 F.2d 1174 (7th Cir.1990) in support of his motion for mistrial. In *Clark* the codefendant stated that he would not testify because of threats he had received and the court admonished the jury not to consider the threats. The Seventh Circuit held that the statement as reinforced by the ad-

monition violated the defendant's right to a fair trial. In contrast, the minimal jury testimony by the codefendant in the present case leaves it speculative as to why he declined to testify, thereby bolstering the likelihood that the jury would abide by the judge's admonition.

The instruction at issue in *Small* contained the following language: "It is also the law that a Defendant is responsible for the acts of his codefendants as well as his own acts. Any act of one is attributable to them all." *Id.* at 499. This Court found such instruction to be an erroneous statement of law because it permitted the defendant to "be found responsible for the shooting, without regard to whether that act occurred while he was acting in concert in carrying out the robbery. It requires only that appellant and the person who inflicted the gunshot would have the relationship of codefendants." *Id.* Instruction 9c, in the present case, did not have such a defect. While it did not explicitly contain the phrase "acting in concert," it clearly required much more than merely the codefendant relationship. Instruction 9c provided:

> An accomplice is criminally liable for everything done by a confederate which was a probable and natural consequence of a common plan. An accomplice need not act out each element of an offense with which he is charged; the acts of one accomplice may be imputed to another. Although mere presence at the scene of the crime, standing alone, is not sufficient to permit an inference that one participated in a crime, such presence may be considered in conjunction with other evidence as one of the factors in the determination of guilt. Other factors to be considered include companionship with one engaged in a crime and the course of conduct before and after the occurrence of the offense.

Record at 427. This instruction does not violate the teachings of *Small*.

■ The defendant's final contention is that the evidence was insufficient to support his conviction of robbery. He contends that there was an absence of proof both that he acted in concert with or assisted his brother, and that his brother committed the offense of robbery.

■ An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credi-

bility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State*, 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State*, 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, (1980), *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. It is not necessary for the accomplice to commit every element of the crime in order to be convicted of it. IND. CODE § 35–41–2–4 (1993); *Fox v. State*, 497 N.E.2d 221, 227 (Ind.1986). While the defendant's presence during the commission of the crime or the failure to oppose the crime are, by themselves, insufficient, they may be considered along with other facts and circumstances tending to show participation. *Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981); *Burkes v. State*, 445 N.E.2d 983, 987 (Ind. 1983). The jury may also consider the defendant's relation to or companionship with the one engaged in the crime, and his actions before, during, and after the crime. *Harris*, 425 N.E.2d at 156. The elements of robbery include a knowing or intentional taking of property from another person or from that person's presence by using or threatening force or putting that person in fear. IND. CODE § 35–42–5–1 (1993). It is elevated from a class C to a class B felony if committed while armed with a deadly weapon. *Id.*

■ The evidence most favorable to the judgment includes the victim's testimony that during the incident the defendant acknowledged that his brother had planned to "come over and rape us and rob us and to torture us." Record at 160. She also testified that as the defendant was on top of her on the floor, his brother asked her for the location of her money and car keys. She stated that the defendant then raped her on the floor while his brother rummaged through her coat pockets for her money and car keys and put them in his own pockets. There is sufficient evidence to show that the defendant knew of his brother's plan to rob the victim and that he aided his brother. Furthermore, the victim testified that both defendants had knives when they first threw her to the floor, thus supplying the deadly weapon needed to elevate the crime to a class B felony.[2]

**2.** The defendant also makes a brief statement

that the items taken from the victim's pockets

In viewing the evidence that supports the judgment in this case, we find that there was sufficient evidence on which the reasonable trier of fact could have found the defendant guilty of the charged robbery.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.

were not removed from the house. The robbery statute does not require that the items taken be removed from the premises, however, only that they were taken from the person's presence, as occurred in this case.