**Donald SPARKS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 50S00–8801–CR–33.**

Supreme Court of Indiana.

May 10, 1989.

Rehearing Denied July 18, 1989.

Charles W. Lahey, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen. Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Donald Sparks was convicted following a jury trial in the Marshall Superior Court of Burglary While Armed With a Deadly Weapon, for which he received a term of twenty-five (25) years, Conspiracy to Commit Burglary, for which he received a term of twenty-five (25) years, and Attempted Theft, for which he received a term of seventeen (17) years, all of said sentences to be served concurrently. Appellant was also found to be an habitual criminal.

Four issues are presented for review in this direct appeal, as follows:

1.  whether the trial court denied Sparks' Sixth and Fourteenth Amendment rights by refusing the appearance of out-of-state co-counsel *pro hac vice;*

2.  whether the trial court erred in allowing the State to call a witness who refused to testify pursuant to the Fifth Amendment;

3.  whether the defendant was submitted to double jeopardy when convicted of both burglary while armed with a deadly weapon and conspiracy to commit burglary; and

4.  whether there was sufficient evidence to find the defendant was an habitual offender.

On February 6, 1987, at about 3:00 a.m., police were informed three men were acting suspiciously in the vicinity of 722 Ferndale in Plymouth, Indiana. Sergeant James Day of the Plymouth Police Department went to the vicinity and observed four men in a blue and white Ford automobile with out-of-state license plates moving slowly along the street. Officer Day parked his car in an alley and observed them. He saw the men stop at the residence at 722 Ferndale, approach the garage at that residence and, after peering in all directions to determine whether they were being observed, break into the garage and attempt to remove one of the vehicles from within it. Day called for help and Sparks was apprehended along with Patrick Migrothy (the driver of the vehicle), Robert Chancey and Robert Dufrene. Chancey was arrested in a cellarway with a loaded .357 magnum and wearing a ski mask. Migrothy was arrested in the automobile which also contained a ski mask and a fully loaded pistol. In the trunk of the vehicle, police found numerous tools generally used in burglaries. Dufrene escaped the scene but was later arrested at the Holiday Inn in Plymouth. He had a key to a motel room in Peru. The police also found an automobile, registered to Sparks, parked in front of a room at the L + K Motel in Peru. It was later discovered the four subjects had rented two rooms at the L + K Motel in Peru. A search of these rooms revealed gloves, stocking caps, crowbars, and handwritten instructions showing the route from the Chicago area to Plymouth.

## I

Sparks was represented by Attorney Charles W. Lahey, a lawyer duly licensed in the State of Indiana, practicing in South Bend. On the morning of trial, July 6, 1987, Attorney Gerald M. Werksman filed in open court a petition for admission to appear *pro hac vice* in Sparks' case. Attorney Lahey moved his admission for the purpose of acting as co-counsel for Sparks in the instant case. Werksman's petition stated he had been retained by Sparks' family and friends to assist in Sparks' defense and that he was a member in good standing of the Illinois bar. The trial court expressed reservations because of the late stage in which this petition was brought, and further, he was concerned from past experiences with out-of-state lawyers that problems might arise from one not familiar with the laws and procedures in Indiana. Attorney Lahey stated he would be lead counsel and would assume full responsibility for the case. Lahey also said he felt he was adequate counsel to prevent an incompetency of counsel claim being founded on Werksman's lack of knowledge of Indiana law and that he would handle all objections and things of that nature which might occur during the trial. Mr. Werksman argued his presence would assure Sparks of the opportunity of two heads rather than one. He indicated he did not anticipate taking a major part in presenting evidence and felt his contribution would be conferring with Sparks and lead counsel. The court then ruled Attorney Werksman could sit at counsel table during the trial and confer with Sparks and Mr. Lahey, and offer his insight and advice to both. However, the court denied Mr. Werksman the privilege of examining witnesses or arguing to the court.

■ Sparks contends this ruling violated his right under the Sixth and Fourteenth Amendments to retain the attorney of his choice. He does not present a reversible issue. The Sixth Amendment of the United States Constitution provides the accused shall enjoy the right to have assistance of counsel for his defense and Art. 1, § 13 of the Indiana Constitution provides the accused shall have the right to be heard by himself and counsel. Neither provision gives the accused the right to as many trial lawyers as he desires. Nor does either constitution provide a defendant tried in a state court with the right to be represented by an attorney not licensed in the state in which the trial is held.

■ In Indiana it is discretionary with the judge whether to allow an out-of-state attorney to appear *pro hac vice*. In pertinent part, Rule 3 of the Indiana Rules for

**1182**

Admission to the Bar and the Discipline of Attorneys provides as follows:

> Any member of the bar of another state in good standing may be permitted, as a matter courtesy, to appear as an attorney in the trial courts of this state in any particular proceeding and for a temporary period; provided, however, such court may require that local counsel appear with such attorney and also sign all briefs, papers and pleadings in such cause and be jointly responsible therefor.

The trial court did not abuse its discretion in limiting attorney Werksman's participation in Sparks' defense. Sparks does not allege nor show that he was prejudiced in any manner by this arrangement.

## II

■ The State attempted to call as its witnesses the other three men charged with Sparks in this robbery, Dufrene, Migrothy, and Chancey, although Dufrene was the only one actually called. The defense noted it was their understanding these men would assert their Fifth Amendment rights and requested they be examined outside the presence of the jury. The court placed Dufrene under oath outside the presence of the jury and ascertained he would "take the Fifth" if called to testify. The court indicated it would not permit Dufrene to take the stand under these circumstances and adjourned for the day. The next morning the State filed a request for use immunity to witness Dufrene, which demanded Dufrene be required to testify under penalty of contempt pursuant to IC 35–37–3–3. Defense counsel objected, claiming this violated the Fifth Amendment right of this witness and was coercive as to him. Dufrene was again sworn outside the presence of the jury and questioned. Dufrene testified that in spite of the use immunity granted by the State, he was only willing to testify in a very limited manner. He stated he could not say what questions he would answer until they were asked of him. The prosecutor then examined Dufrene and obtained of him his name, the fact that he then resided in the Marshall County Jail, that his prior residence was Louisiana, and he had lived in Louisiana for sixty-two years. He was asked if he recalled his whereabouts on the 6th of February, 1987, starting at midnight, but he never answered that question. A new question was asked: "Do you recall being arrested here in Marshall County, Mr. Dufrene?" He answered: "Yes, I do." The State asked where and when he was arrested, and Dufrene testified he was arrested at the Holiday Inn in Plymouth about six o'clock. He did not know the exact time. He was asked if he recalled being in a motel room at the L + K Motel in Peru, Indiana, and stated he did not. Finally, when asked if he knew a man by the name of Robert Sparks, he refused to answer on Fifth Amendment grounds. On his refusal to answer, the court found him in contempt and took punishment under advisement. It was the court's opinion this witness should not be placed on the stand before the jury, and he held lengthy discussions with counsel outside the jury's presence. The State argued it should be able to call this witness and have him answer only those questions he had answered outside the presence of the jury. Therefore, there would be no need to show he was refusing to testify further and was claiming the Fifth Amendment rights necessitating the trial court finding him in contempt before the jury. The defense objected to the entire proceedings, however, and claimed it had a right to cross-examine this witness on these questions. The court gave the defense an opportunity to cross-examine the witness outside the presence of the jury in order to determine the range of cross-examination and the attitude of the witness. The defense declined to do this. The court then attempted to obtain from defense counsel the extent of their proposed cross-examination, suggesting to them it would be during their cross-examination that this witness may refuse to testify, which would result in a finding of contempt before the jury, a circumstance the trial court was trying to prevent. The court then indicated in view of the attitudes the parties were taking in attempting to resolve the issue, he would allow the witness to take the stand and leave it to the parties to determine which course they wished to take.

The State called witness Dufrene and asked him the same questions it had asked outside the presence of the jury, stated no further questions were answered and passed the witness. The defense then moved to strike the prosecuting attorney's last statement that no further questions were answered, and the court denied the motion. Defense counsel then cross-examined the witness. The witness answered many of Sparks' questions, but on several occasions refused to do so when the questions were directed to facts involving the actual commission of the crime. Upon defense counsel's request, the court ordered the witness to answer those questions, and when the witness refused, the court found him in contempt of court. The witness testified he was never told why he was arrested at the Holiday Inn but refused to answer where he had been for the six hours prior to his arrest. The court ordered him to answer the question but he refused. Defense counsel then moved to strike all of this witness' testimony and grant a mistrial because of his inability to effectively cross-examine the witness. The court denied both motions and indicated it would have the witness step down and another witness called. Defense counsel, however, advised the court it wished to cross-examine the witness further. The witness answered some of the questions; he stated he was never in the L + K Motel in Peru but had been in the restaurant of the L + K Motel in Plymouth. He denied ever being in Mr. Horvath's garage, and the only thing he remembered about February 6 was that he was arrested on that day. He stated he never attempted to break into a garage on Earl Street in Plymouth and had never been inside such a garage. He then stated the only place mentioned which he had been in was the Holiday Inn and the L + K Restaurant at 6:00 a.m. He stated he was not acquainted with Donald Sparks, had only met him while incarcerated in the jail after his arrest and then thought Sparks' name was really Stork. He also denied being familiar with Migrothy or Chancey. He refused to answer whether he had checked into the L + K Motel in Peru with another person and where he

was at 3:00 a.m. He also refused to explain how he got to the Holiday Inn in Plymouth where he was arrested or where he was immediately prior to his arrest. At the insistence of defense counsel, the court ordered the witness to answer each of those questions. He refused to do so and was found in contempt with the penalty taken under advisement.

Following this testimony, defense counsel moved for a mistrial and argued that if this witness was not testifying selectively, he would supply sufficient information to establish that Sparks was not guilty; and he would further testify neither he, anyone in his presence, or, more specifically, Sparks ever attempted to enter Horvath's garage. The court denied the motion for mistrial on this basis and also denied a motion to strike the witness' testimony. The witness was then permitted to step down and the State indicated to the court outside the presence of the jury that it would not request use immunity for any of the other witnesses and rested its case.

In *Aubrey v. State* (1974), 261 Ind. 692, 310 N.E.2d 556, the trial court permitted the State to call an alleged accomplice to the witness stand who refused to testify based on Fifth Amendment grounds. The State was aware the witness would do this. Still before the jury, the State offered to grant the witness immunity as to this charge and the court ordered the witness to answer the questions based on this immunity. When the witness still refused to answer the questions, the trial court found him in contempt of court and ordered him to be held in the jail until he purged himself of said contempt. Defense counsel moved the jury be admonished to disregard all of what it heard involving that witness and not consider it as evidence. The trial court refused to do so, responding counsel could bring that out in argument and final instructions of the court. This refusal was reversible error in *Aubrey*, and this Court held the natural, even inevitable, inference which is raised in the jury's mind when an alleged accomplice refuses to testify is that the withheld testimony would be damaging, not only to the witness, but also to the

defendant. *Aubrey*, 261 Ind. at 695, 310 N.E.2d at 559. Thus, the refusal to testify indelibly implants adverse inferences in the minds of the jurors and reaches them in a form not subject to cross-examination. This Court cited *Douglas v. Alabama* (1965), 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed. 2d 934, in support of the proposition that an alleged accomplice's refusal to testify may well have been the equivalent in the jury's mind of testimony.

In *Cox v. State* (1986), Ind., 493 N.E.2d 151, a case involving similar circumstances, this Court held the defendant waived the issue when it failed to request admonishment by the trial court. This Court found further the argument was rendered moot when the alleged accomplice took the stand, so found no reversible error. *Id.* at 157. The defense requested no admonishment to the jury here and none was given. The only objection made by defense counsel here was that if witness Dufrene was free to testify, he would establish Sparks was not guilty by showing no attempt was made by any of them to enter Horvath's garage. There is, of course, no support for any such conclusion as to Dufrene's testimony. There are no facts to support counsel's speculative statement that Dufrene could, and would, testify in that manner. Furthermore, by cross-examining witness Dufrene, Sparks did gain answers to his questions which were to the effect that he was not present and did not commit the crime in question. Under these circumstances, the trial court did not abuse its discretion in the way it handled this situation and we find no reversible error.

### III

■ Sparks contends he was submitted to double jeopardy by being charged and convicted of burglary while armed with a deadly weapon, and conspiracy to commit the same burglary. This issue has been settled adverse to Sparks' position since burglary and conspiracy to commit burglary are different offenses. *See, e.g., Iannelli v. United States* (1975), 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (gambling and conspiracy to commit gambling); *Elmore et al. v. State* (1978), 269 Ind. 532, 541, 382 N.E.2d 893, 898 (theft and conspiracy to commit theft); *Hossman v. State* (1985), Ind.App., 482 N.E.2d 1150, 1155 (burglary and conspiracy to commit burglary).

■ Sparks also argues that since he was not the person found with the gun it would be unfair to charge him with burglary while armed with a deadly weapon. However, the act of one confederate is attributable to all. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, 982. There was no violation of the provisions of the double jeopardy clause and the trial court did not err in entering judgment on Sparks' convictions.

### IV

■ Finally, Sparks claims the evidence presented was insufficient to support the jury's finding Sparks was an habitual offender. Evidence was presented which supported the contention Sparks committed each of the three felonies and was sentenced for them. Sparks introduced evidence of a pardon he received on September 17, 1976, relating to his conviction for robbery in Montgomery, Alabama, on June 1, 1971, which was one of the convictions proved up by the State. The State stipulated to the admission of the pardon. Sparks now claims the trial court erred by allowing the Alabama robbery conviction into evidence when Sparks had evidence of a pardon for that conviction, and accordingly, that conviction did not count for purposes of IC 35–50–2–8. Since a special verdict was not rendered, this Court cannot determine which two convictions the jury relied on in finding Sparks guilty. The State relies on our holding in *Williams v. State* (1981), Ind., 424 N.E.2d 1017, 1018, that the pardon exclusion in IC 35–50–2–8 is viewed as an affirmative defense and the burden is upon the defendant to come forward with such a defense rather than on the State to prove the defendant has not been pardoned. The facts were somewhat different in *Williams.* Williams claimed the State failed in its proof since it did not show the defendant had not been pardoned

in any of the convictions proved up. The trial judge asked defendants if they had facts showing any pardon they intended to present and the defendants said they had no such facts. Thus, this Court held the State does not need to negate a pardon in every conviction it proves up, but rather, the existence of a pardon is an affirmative defense requiring proof by the defendant. It appears the State may have known of the defendant's evidence of a pardon but still chose to prove up this conviction along with the other two, requiring the defendant to bring forth affirmatively evidence of the pardon. Although it might have been better procedure for the State to exclude this conviction which required this action by the defendant and to present the two convictions it knew it could prove up, we see no reversible error here.

Sparks cites *Boarman v. State* (1987), Ind., 509 N.E.2d 177, for the holding it is permissible to charge an habitual offender with more than two unrelated felonies but if one of the offenses is determined to be, as a matter of law, an offense which does not qualify, it is necessary to reverse the determination since the court cannot determine which offenses the jury relied upon in finding the defendant guilty. *See also Hudson v. State* (1983), Ind., 443 N.E.2d 834; *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339. When the State presents more than two prior felonies, this problem can be avoided by having the jury return a special verdict indicating which convictions it relied on to conclude the defendant is an habitual criminal. *Eldridge v. State* (1986), Ind., 498 N.E.2d 12, 13. That situation is not presented here, however. The jury heard evidence that one conviction was removed from qualification because there was a pardon. It also heard evidence of two convictions that were qualified. Therefore, the evidence supported the jury's verdict that there were two qualified convictions. There is no merit to the argument we should presume the jury failed to follow the evidence and enter judgment contrary to its contents.

Sparks also claims the evidence is insufficient for one of the qualified convictions in Cobb County, Georgia in 1970. He claims the evidence tended only to show that someone with the same name committed the crime. The record shows, however, that the State introduced certified copies of a felony judgment for conviction of auto theft and burglary of Donald Eugene Sparks in Cobb County, Georgia, in 1970. They also introduced a fingerprint card taken from Sparks on September 11, 1970, in Cobb County, Georgia, which witness Officer Mercer testified matched those he had taken from Sparks. A photo of Sparks was also included which showed the photo was taken on September 11, 1970. The State presented sufficient supporting evidence to show Sparks was the same person as the one identified as Donald Eugene Sparks on September 11, 1970, in Cobb County, Georgia.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.