Kenneth BROSHEARS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 87A01–9203–CR–58.

Court of Appeals of Indiana, First District.

Dec. 10, 1992.

---

J. William Bruner, Boonville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Kenneth Broshears appeals his conviction and sentence for criminal recklessness, a Class D felony.[1] His three-year sentence was enhanced by an additional 20–year term because he was found to be an habitual offender under IND.CODE 35–50–2–8. Broshears advances two arguments on appeal:

I. Whether the trial court was required to disqualify the prosecutor on the underlying charge because the prosecutor had previously represented Broshears.

II. Whether the trial court's refusal to give the habitual offender jury special verdict forms requires remand for resentencing.

### FACTS

Around midnight on July 17, 1990, three youths contacted the Chandler City police department and reported that an intoxicated man on a moped had waved a handgun at them. Officer Lockyear investigated. When he arrived on the scene, he asked the man, Broshears, whether Broshears had a gun. Broshears replied, "Do you see one?" Officer Lockyear did not, but frisked Broshears for their mutual safety. No gun was found.

Despite Officer Lockyear's command to remain in place, Broshears stood up, walked to the side of the road, dragged his moped from a nearby ditch, and mounted it. Officer Lockyear told him to stop, but was ignored. Broshears then refused to display his hands when ordered to do so.

Not only did Broshears have a gun, he fired it twice in Officer Lockyear's direction before Officer Lockyear could defend himself. One of his return volleys struck Broshears in the leg. Broshears tried to flee on his moped, but his wound or his intoxication or some combination of the two factors hindered him. He threw his gun into the weeds and remained still until Officer Lockyear's back-up arrived. When it did, Broshears gave up. Broshears's drunken initiation of this gunfight led S. Anthony Long, the local prosecutor, to charge Broshears with attempted murder. Broshears's six prior felony convictions led Long to charge Broshears with being a habitual offender.

Because Long had represented Broshears in a 1974 shooting associated with the first of Broshears's felony convictions, and because that conviction was, in part, the basis of the habitual offender accusation, Broshears asked the trial court to disqualify Long and appoint a special prosecutor in Long's stead. Following a hearing on the matter, the trial court agreed Long should not participate in the habitual offender proceedings, but denied Broshears's motion to replace Long with a special prosecutor on the underlying attempted murder prosecution.

The jury acquitted Broshears of the attempted murder charge but convicted him of criminal recklessness, a lesser-included Class D felony. Long's replacement then argued Broshears was an habitual offend-

---

**1.** IND.CODE 35–42–2–2.

er, submitting evidence that Broshears had been convicted of six prior felonies: two Class Ds, one Class C, and three thefts occurring before October 1, 1977, the effective date of the current felony classification system.[2] Broshears asked the trial court to give the jury special verdict forms because he thought it possible the jury might rely solely on his Class D felony convictions, thus subjecting him to only an eight-year enhancement rather than a 30–year enhancement. The trial court denied the motion, and the jury returned a general verdict form reading, "We, the jury, find the Defendant, Kenneth Broshears, to be an habitual offender." *Record* at 1000. The trial court enhanced Broshears's sentence by an additional 30 years, and, pursuant to IND.CODE 35–50–2–8(e), reduced the 30–year enhancement by ten years. Broshears appeals.

## DISCUSSION AND DECISION

### I. Disqualification

Broshears first argues the trial court erred by refusing to disqualify Long from the underlying attempted murder prosecution. He contends *State ex rel. Meyers v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377, supports his position.

In *Meyers*, the defendant sought to have both the local elected prosecutor, John Meyers, and his staff disqualified because Meyers had previously represented the defendant in a case serving, in part, as the basis for the habitual offender accusation. Our supreme court, citing Canons 4, 5, and 6 of the Code of Professional Responsibility,[3] observed "[t]he precepts of professional ethics forbid participation of a lawyer in the prosecution of a criminal case if, by reason of his professional relationship with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith." *Meyers, supra,* at 1378. The court concluded:

In this case, it appears that nothing in Meyers's representation of the accused in the two prior theft cases would have any relation to the present theft case. However, the habitual offender charge is based upon the same two prior theft cases in which Meyers was involved. Therefore, there is a substantial relationship involved. Although it is true, that the fact of defendant's prior convictions are a matter of public record, we cannot say without speculation that the prosecutor's knowledge of those prior cases will not actually result in prejudice to the defendant. The public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification. The trial court properly held that Meyers must be disqualified in this case.

*Id.* at 1379. Additionally, "[t]he petitioner must demonstrate that he has been prejudiced by the prosecutor's previous representation." *Jaske v. State* (1990), Ind.App., 553 N.E.2d 181, 184, *trans. denied.*

The *Meyers* holding is more limited than Broshears wishes it to be, however. In *Meyers*, our supreme court held that "where the habitual offender charge against the defendant was based upon two prior theft cases in which the prosecutor had represented the defendant, the prosecutor had to be disqualified and a special prosecutor appointed in his place." *Sears v. State* (1983), Ind., 457 N.E.2d 192, 195. The concern in *Meyers* is the appearance of impropriety raised by an habitual offender prosecution based on convictions in which the prosecutor had represented the defendant. This concern is not present in Broshears's case because Prosecutor Long was, in fact, disqualified from the habitual offender proceedings against Broshears.

■ Alternatively, Broshears argues Long should have been disqualified from the attempted murder prosecution because the facts surrounding Long's 1974 representation of Broshears were similar to the 1990 attempted murder prosecution. Spe-

---

**2.** 1976 Ind. Acts Pub.L. No. 148, Sec. 28, as amended by 1977 Ind. Acts Pub.L. No. 340, Sec. 151.

**3.** Now embodied in our Rules of Professional Conduct.

cifically, he argues Long could have used a *modus operandi* theory against Broshears based on the similarity.[4]

Even assuming the extrinsic evidence from the 1974 incident is admissible for the 1990 attempted murder prosecution, we must reject Broshears's argument for at least two reasons. The *Meyers* standard, it will be recalled, is that if by reason of his 1974 representation of Broshears, Long acquired a knowledge of facts upon which the 1990 attempted murder prosecution was predicated, or acquired a knowledge of facts which were closely interwoven with the attempted murder prosecution, Long should have been disqualified.

First, and most fundamentally, we observe the rule in *Meyers* is designed, in part, to protect confidential information. Citing *Meyers*, the supreme court in *Sears*, *supra*, at 195, noted that "[a] special prosecutor is necessary only when the accused can demonstrate that, by reason of his former confidential relationship with the prosecutor, the prosecutor has acquired special knowledge of the facts being litigated, or facts which are closely associated therewith." Although Long may have originally learned of Broshears's proclivity to shoot people from his professional relationship with Broshears, the 1974 facts Broshears now claims could give rise to a *modus operandi* theory necessarily lost their "special" or "confidential" status when Broshears, through his statement to the police, publicly admitted them. *See Fluty v. State* (1947), 224 Ind. 652, 71 N.E.2d 565 (defendant who took witness stand and testified as to his recollections concerning confidential communications with his attorney "destroyed the confidential nature of the communications" and by that act waived the right to confidentiality). Because Broshears points to no information Long could have used that retained its confidential status, the confidentiality rationale is inapplicable.

Second, it is plain the 1990 attempted murder prosecution was not predicated on any facts Long may have gleaned from his 1974 representation of Broshears. Instead, the 1990 prosecution was based on an entirely new set of facts having nothing to do with the previous incident. There is no indication Broshears would not have been prosecuted for the attempted murder of Officer Lockyear had the 1974 incident never occurred; in no sense, then, can it be said the 1990 prosecution was predicated on, that is, based on or founded on, Broshears's 1974 behavior.

We acknowledge that coincidentally, facts from the 1974 incident could have been used against Broshears in the 1990 prosecution. Unless the 1974 facts predicate the 1990 prosecution, however, or are closely interwoven with it, the rule of *Meyers* does not apply and no special prosecutor is required. The facts of the earlier incident are demonstrably not "closely interwoven" with the 1990 prosecution. Although arguably relevant to prove intent, motive, or purpose, Broshears's 1974 behavior simply was not "closely interwoven" with the 1990 prosecution, as shown by the fact that Long made no mention of the 1974 incident whatsoever during the 1990 prosecution. The fact that behavior from the earlier incident may be relevant to behavior concerning the later incident does not, by itself, necessarily establish that the

---

**4.** A statement Broshears gave to the police discloses that on September 10, 1974, while stealing copper cable, Broshears fired several shots at a man and a "kid" who evidently objected to his theft. After running into some nearby woods, Broshears saw one John Shackelford in the distance. Broshears hid in the grass, and as Shackelford approached, Broshears "tried to shoot John but the chamber was empty." *Record* at 88. Shackelford did not take kindly to the gesture and used his shotgun to ensure Broshears behaved himself.

Broshears was charged with theft, assault with intent to kill, aiming a dangerous weapon, and carrying a handgun without a license. With Long's assistance, he entered a plea bargain which resulted in his pleading guilty to the theft and aiming a dangerous weapon charges.

Broshears observes that the facts of both cases were intimately connected to the misuse of firearms and to the culpable mental state associated with that misuse. He argues "[t]he *modus operandi* in each case is arguably similar," *Appellant's Brief* at 14, and that under settled rules of evidence, Long could have used *modus operandi* evidence of extrinsic offenses to prove intent, motive, purpose, or identity.

two sets of behaviors are closely interwoven for disqualification purposes. *See Havens v. Indiana* (7th Cir.1986), 793 F.2d 143, *cert. denied,* 479 U.S. 935, 107 S.Ct. 411, 93 L.Ed.2d 363.

We conclude the trial court did not err by refusing to appoint a special prosecutor to prosecute the underlying attempted murder charge against Broshears.

## II. Habitual Offender

Prior to 1985, our General Assembly imposed only one punishment for recidivist felony offenders: add 30 years to their sentence. The governing statute was IND. CODE 35–50–2–8, the "big habitual offender" statute.[5]

The 30–year enhancement came to be considered too harsh for individuals whose felony convictions were less serious, however, and in 1985 our General Assembly enacted IND.CODE 35–50–2–7.1, the habitual Class D felony offender, or "little habitual offender" statute. *See Slocumb v. State* (1991), Ind., 573 N.E.2d 427, 428–29. "A person is an habitual Class D felony offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated Class D felony convictions." IND.CODE 35–50–2–7.1(d). Subsequent case law has established that in order to invoke the little habitual offender enhancement, all the prior unrelated felonies relied upon, as well as the underlying felony, must be Class D felonies. *Andre Johnson, supra,* at 1181; IND.CODE 35–50–2–8(h).

The statutory scheme sounds simple enough. If all three of a defendant's felony convictions are for Class D felonies, only the little habitual offender statute applies. If one or more of the three is a Class C, B, or A felony conviction, the big habitual offender statute applies. There are several factors, however, which have confounded simple application of the two habitual offender statutes.

What if one of the convictions relied upon was later overturned? *See Sparks v. State* (1989), Ind., 537 N.E.2d 1179, 1184–85; *Eldridge v. State* (1986), Ind., 498 N.E.2d 12, 13; *Miller v. State* (1981), 275 Ind. 454, 458–60, 417 N.E.2d 339, 342–43. What if the person accumulated the felonies as a result of convictions in our sister states, which either did not share Indiana's classification system or punished the same behavior differently than did Indiana? *See Slocumb, supra,* at 429. And what of an individual who accumulated one or both of his two prior unrelated felonies before the law classified felonies? *See Best v. State* (1991), Ind., 566 N.E.2d 1027, 1029; *Henry Johnson v. State* (1991), Ind.App., 575 N.E.2d 282, 284–86, *trans. denied.*

There is yet another factor that complicates application of the habitual offender statutes: recidivists are not always charged with their recidivism at the earliest possible moment. Some, like Broshears, accumulate five or more felony convictions before they are finally charged, and when the day of reckoning comes, prosecutors often deluge the jury with evidence of all the defendant's prior convictions, not just the two required by statute. One can understand the choice—better to set forth all convictions, so that if one is later overturned or pardoned, enough will remain to insure the recidivist remains in jail.

The practice of submitting evidence of more than two prior unrelated felony convictions has been sanctioned by our supreme court, which has "consistently held that the proof of a third prior conviction is mere surplusage under the requirements of the habitual offender statute." *Hall v. State* (1980), Ind., 273 Ind. 507, 405 N.E.2d 530, 535, citing *Jessup v. State* (1971), 256 Ind. 409, 269 N.E.2d 374 and *Hanks v. State* (1948), 225 Ind. 593, 76 N.E.2d 702. Even so, however, the court has been careful to register its concern that when gener-

---

5. We follow the lead set by Justice Krahulik in *Andre Johnson v. State* (1992), Ind., 593 N.E.2d 1181. *Andre Johnson* refers to IND.CODE 35–50–2–8, which subjects an habitual offender to a presumptive 30 year sentence enhancement, as the "[b]ig [h]abitual [o]ffender" statute. Because we will have occasion to discuss two cases each with the name of *Johnson v. State,* we will distinguish the two by reference to the the defendant-appellant's first name.

al verdict forms are used, as they frequently are, it is not possible to know which convictions the jury relied upon in making the habitual offender determination. *See Nash v. State* (1989), Ind., 545 N.E.2d 566, 568; *Boarman v. State* (1987), Ind., 509 N.E.2d 177, 180; *Eldridge, supra,* at 13; *Hudson v. State* (1983), Ind., 443 N.E.2d 834, 837; *Miller, supra,* at 460, 417 N.E.2d at 343. Because the uncertainty can occasion remand, "unless special findings are to be submitted, the prosecutorial wisdom of charging prior offenses in excess of the statutorily required number is subject to question." *Miller, supra,* at 460, 417 N.E.2d at 342–43.

The defendant in *Miller* was charged with four prior felonies. Two of these prior felony convictions were not "unrelated" for habitual offender purposes, however, and should not have been considered by the jury. The supreme court remanded, noting that "[a] general verdict can not stand when the case was tried and submitted on two theories, one bona fide and the other not." *Id.* From *Miller* and cases like it the general principle developed that if one of the offenses is determined to be, as a matter of law, an offense which does not qualify, it is necessary to reverse the habitual offender determination if the court cannot determine which offenses the jury relied upon in finding the defendant guilty of being an habitual offender. *Sparks, supra,* at 1185. Thus, the solution: "[w]hen the State presents more than two prior felonies, this problem can be avoided by having the jury return a special verdict form indicating which convictions it relied on to conclude the defendant is an habitual [offender]." *Id.*

Unfortunately, the problem of uncertainty was not avoided in Broshears's case. His request for special verdict forms was denied. The State presented evidence that Broshears had accumulated the following convictions:

1974 Theft, a felony
1974 Theft, a felony [6]
1976 Theft, a felony

1984 Operating a Motor Vehicle While Being Under the Influence of Intoxicating Liquor, a Class D felony
1987 Operating a Motor Vehicle While Being Under the Influence of Intoxicating Liquor, a Class D felony
1988 Battery, a Class C felony

After the jury determined Broshears was an habitual offender, the trial court enhanced his criminal recklessness sentence by a total of 20 years.

Broshears claims it is impossible to determine which of these six felonies the jury relied upon. He claims there is no evidence to refute his hypothesis that the jury relied only upon Class D felonies, and he concludes enhancement under the big habitual offender statute was improper under these circumstances. We agree.

■ In cases like Broshears's, where it is possible a defendant is subject to sentence enhancement under either the big or the little habitual offender statute, depending on which prior felonies the jury relies upon, we hold that a trial court commits error requiring remand by denying a request to use special verdict forms. The time has come to end the uncertainty regarding which convictions the jury did or did not rely upon in reaching its habitual offender determination. A simple, oft-suggested solution exists. Although Ind. Trial Rule 49 abolished special verdicts and interrogatories to the jury, necessity required that we permit special verdict forms in comparative fault cases to apportion percentages of fault. IND.CODE 34–4–33–6. Similarly, special verdict forms are necessary in habitual offender proceedings when it is possible that a particular defendant may be either a big or a little habitual offender, depending upon which convictions the jury relies.

Several types of special verdict forms are possible to achieve the goal of ending uncertainty about which convictions the jury has relied upon in reaching its habitual offender determination. Best, perhaps, is

---

6. Both parties agree on appeal that this second 1974 theft conviction was not "unrelated" to the first 1974 theft conviction, and, consequently, should not have been considered by the jury during the habitual offender phase.

that form which 1) identifies for the jury all the prior unrelated felonies alleged and for which evidence was introduced and 2) requires that the jury explicitly declare whether it relied upon each individual conviction listed in reaching its habitual offender determination. *See McCollum v.*

*State* (1991), Ind., 582 N.E.2d 804, 816 n. 2. By way of example, we have constructed the following form appropriate for Broshears's case based on Indiana Judges Association, INDIANA PATTERN JURY INSTRUCTIONS (CRIMINAL) No. 16.11 (2nd ed. 1991):

**We, the jury, find that the defendant has accumulated the following alleged prior unrelated felony convictions:**
(Check "Yes" if you find the defendant has accumulated the particular conviction and check "No" if you find the defendant has not accumulated the particular conviction.)

**YES    NO**

| YES | NO | Year | Conviction |
|---|---|---|---|
| ____ | ____ | 1974 | Theft, a felony |
| ____ | ____ | 1976 | Theft, a felony |
| ____ | ____ | 1984 | Operating a Motor Vehicle While Being Under the Influence of Intoxicating Liquor, a Class D felony |
| ____ | ____ | 1987 | Operating a Motor Vehicle While Being Under the Influence of Intoxicating Liquor, a Class D felony |
| ____ | ____ | 1988 | Battery, a Class C felony |

**Accordingly, we find the defendant**

     [ ]    is      (if the defendant has accumulated two or more prior unrelated felonies)

     [ ]    is not      (if the defendant has not accumulated two or more prior unrelated felonies)

**an habitual offender.**

_____       _____
Date             Jury Foreman

---

Several observations are pertinent. First, the form does not speak for itself; the jury must first be instructed on the meaning and application of the relevant legal terminology. But as long as the special verdict form and accompanying instructions insure certainty on the issue of the jury's reliance, the specific wording or format used remains in the trial court's sound discretion.

Second, we have omitted Broshears's second 1974 theft conviction; because it is not "unrelated," as that term is defined in IND.CODE 35–50–2–8(b), the jury should not consider it.

■ Third, because it is unnecessary to classify pre–1977 felonies for the jury's benefit, we have characterized each of the 1974 and 1976 theft convictions simply as "a felony." The jury's function in an habitual offender proceeding, it must be remembered, is to determine which particular felony convictions a defendant has accumulated and to conclude whether or not the defendant is an habitual offender. *Rainey v. State* (1990), Ind.App., 557 N.E.2d 1071, 1076. Once the jury has determined whether the defendant is an habitual offender, it is up to the trial court to determine whether the defendant should receive a big habitual offender enhancement or a little habitual offender enhancement, for sentencing pursuant to habitual offender proceedings is expressly and exclusively the responsibility of the trial court. *See Beasley v. State* (1983), Ind., 452 N.E.2d 982, 985.[7]

---

7. Although the jury need not be concerned with the proper classification of pre–1977 felonies, the same cannot always be said for the trial court, of course. Suppose, for example, that the jury found Broshears had accumulated the first four convictions listed on the form but not the last, the 1988 Class C felony conviction, and, in accordance with the instructions, had indicated Broshears was an habitual offender. Should

Fourth, this form is not unduly suggestive, inasmuch as it gives the jury the opportunity to assess each prior unrelated conviction individually. *See Criss v. State* (1987), Ind., 512 N.E.2d 858, 861. In fact, we consider our form's primary strength to be that it forces the jury to make a decision concerning each prior felony, thus eliminating all uncertainty about whether the jury "relied upon" a particular conviction in reaching its final conclusion.

As a final matter, we do not accept the State's argument that based on *Eldridge, supra,* we should presume the jury relied on all of the convictions alleged. Although the *Eldridge* court did indulge such a presumption, the facts there are dispositively distinguishable from Broshears's case. Eldridge was found to be an habitual criminal in 1975, long before enactment of the little habitual offender statute, based on evidence of three prior felony convictions. One conviction was later overturned. Because "[f]or all that appears, even without his 1965 conviction, Eldridge is a man who was convicted, sentenced, and imprisoned twice for felonies before he committed the instant burglary[,]" the court could safely

conclude the habitual criminal determination was proper. *Id.* at 13 (Shepard, J., concurring in result). There was no issue of big and little sentence enhancements present. In Broshears's case, although it is plain Broshears is an habitual offender, the issue has arisen regarding whether he is a big habitual offender or a little habitual offender. The presumption that the jury relied on all convictions alleged is inappropriate in such a circumstance.

We have no way of knowing which convictions Broshears's jury relied upon. The trial court erred when it denied Broshears's motion for special verdict forms. We remand the cause for resentencing as if Broshears stood before the trial court for the first time. *See Slocumb, supra.*

The conviction is affirmed; the sentence is remanded for reconsideration.

ROBERTSON and SULLIVAN, JJ., concur.

Broshears receive a big enhancement or a little one?

The answer depends on how the 1974 and 1976 felony theft convictions are classified. If both are the equivalent of Class D felonies, only an eight-year sentence enhancement would be proper; if, however, the trial court determined that at least one of the two is the equivalent of a Class C felony, a 30–year enhancement would be proper.

Unfortunately, there is little case law on the issue of how to classify pre–1977 felonies for habitual offender purposes. *Best, supra,* suggests an "equivalency" analysis. The jury in Best's habitual offender phase made specific findings that Best was convicted on each of four prior offenses: theft (1976), burglary (1976), theft (1985), and being found an habitual traffic offender (1985). It concluded he was an habitual offender under IND.CODE 35–50–2–8. Best argued the big habitual offender sentence enhancement was improper because all his prior felonies were Class Ds or their equivalents. Without further explanation, our supreme court concluded the little habitual offender statute "does not apply to to Best because one of the prior crimes relied upon for sentencing was a 1976 burglary, the equivalent of a Class C felony." *Id.* at 1029.

Based on the equivalency analysis in *Best,* this court in *Henry Johnson, supra,* concluded John-

son's 1974 theft conviction was the equivalent of a Class C felony because Johnson received an indeterminate one to ten year sentence, which, the majority felt, "far exceeds the the sentencing range for Class D felonies [and] hardly represents an equivalence." *Id.* at 286.

We are not convinced that it is appropriate to rely solely on the penalty the defendant received when determining how to treat an unclassified felony conviction in an habitual offender proceeding. We have no occasion to so hold, but we are of the opinion Judge Shields's dissent in *Henry Johnson* reached the correct result when it concluded Johnson's theft conviction was properly classified as no greater than a Class D felony. As Judge Shields sensibly observed, the crime of theft is presently classified as a Class D felony. Theft only becomes a Class C felony when the defendant has stolen property of another valued at more than $100,000. IND.CODE 35–43–4–2(a). There is no reason to believe that had Johnson been sentenced for his theft today, he would have received a sentence greater than that authorized for any other Class D felony.

Similarly, there is nothing in the record to suggest that Broshears's 1974 and 1976 theft convictions should be treated as being greater than a Class D felony. Certainly had he been sentenced today for those crimes, they would be properly classified as Class D felonies only.